UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                         Case Nos.:   3:14cr59/RV/EMT
                                                        3:17cv855/RV/EMT

JOHN DAVID CASTLEBERRY

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendant's Amended Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal
Custody (ECF No. 545).   The Government filed a response (ECF No. 552), and
Defendant filed a reply (ECF No. 556).   The case was referred to the undersigned
for the issuance of all preliminary orders and any recommendations to the district
court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28
U.S.C. § 636(b); Fed. R. Civ. P. 72(b).   After a review of the record and the
arguments presented, the undersigned recommends that the section 2255 motion be
denied without a hearing.   *See* Rules 8(a) and (b), Rules Governing Section 2255
Proceedings.

# PROCEDURAL HISTORY

On July 16, 2014, Defendant John David Castleberry and seven co-defendants were charged in a six-count indictment with crimes arising from a scheme to defraud the United States—specifically, the Internal Revenue Service (IRS) (ECF No. 3).[1] Castleberry and four co-defendants proceeded to a jury trial in January of 2015. Before trial, the court held a *Faretta*[2] hearing, during which Castleberry waived his right to be represented by court-appointed counsel and elected to proceed to trial with the assistance of standby counsel (ECF No. 471 at 12; ECF No. 499).[3]    After a twelve-day trial, the jury found Castleberry guilty on all counts (ECF No. 266).

---

[1] Count One of the indictment charged that between April 2, 2008 and January 7, 2010, Castleberry and two co-defendants conspired to violate 26 U.S.C. § 7206(2) and defraud the United States, in violation of 18 U.S.C. § 371 (ECF No. 3).    Counts Two and Three charged the same offenses as Count One but alleged different time frames (i.e., between April 11, 2008 and May 11, 2010, and between August 29, 2008 and May 10, 2010, respectively) and charged different numbers of co-defendants (four and three, respectively).    Counts Four and Five charged that on November 2, 2008, and September 3, 2008, respectively, Castleberry and one co-defendant aided and assisted in the filing, preparation, and presentation of false and fraudulent federal income tax returns to the IRS, in violation of 26 U.S.C. § 7206(2).    Count Six charged that on April 15, 2009, Castleberry alone provided the IRS with a false written declaration regarding taxable interest income, in violation of 26 U.S.C. § 7206(1).

[2] *Faretta v. California*, 422 U.S. 806 (1975).

[3] Castleberry was not alone in this decision.    Co-defendants Mark Stokes and Melinda Stokes also proceeded pro se with standby counsel, while Christopher Baum and Teresa Haggerty were represented by court-appointed counsel (*see* ECF No. 265).

According to the Second Final Presentence Investigation Report (PSR), the applicable advisory sentencing guidelines range was 121 to 151 months (ECF No. 361, PSR ¶ 122).   The maximum terms of imprisonment were five years on Counts 1 through 3 and three years on Counts 4 through 6 (*id.*, ¶ 121).

The court sentenced Castleberry to a total term of 126 months of imprisonment (ECF Nos. 392, 498).   The sentence was comprised of 60 months as to Count 1, a consecutive 60-month term as to Count 2, a consecutive 6-month term as to Count 3, and 12-month terms as to Counts 4 through 6.   The 12-month terms were to run concurrently with each other and with the sentences imposed as to Counts 1 through 3.   Castleberry's custodial sentence was followed by three years of supervised release.   The court also ordered Castleberry to pay restitution in the amount of $328,143.90 (ECF No. 392 at 6–7).

Castleberry appealed, arguing the trial court's comments throughout the trial prejudiced his good-faith defense to tax fraud and denied him a fair trial (ECF No. 552-1 at 4 (Appellant's Opening Brief)).   He also claimed the jury instructions were erroneous in two respects (*id.*).   After oral argument, the Eleventh Circuit affirmed (ECF No. 515).

## FACTUAL BACKGROUND

The conspiracy in this case involved what the IRS refers to as the "Form 1099-OID [original issue discount] Scheme."[4]    Castleberry was the main proponent of the scheme among the defendants charged in the case.    Generally, proponents of the Form 1099-OID Scheme assert they can lawfully draw on secret U.S. Treasury accounts purportedly created in the 1930's for all citizens by issuing a Form 1099-OID to a creditor.    They believe issuance of the Form 1099-OID allows a creditor to make a claim with the U.S. Treasury Department and receive full payment of the citizen's debt.    Frivolous Form 1099-OIDs are often issued to satisfy debts such as mortgages, car loans, and credit card balances.    The Form 1099-OIDs submitted with the tax returns prepared and filed by the defendants in this case also reported tax withholding for the full amount of the fraudulent original issue discount (OID), and the defendants reported an equal amount of false withholding on their IRS Form 1040s.    The false reporting resulted in an inflated tax liability but a large false refund claim due to the quantity of reported tax withheld.

The defendants were aided in their scheme by the fact that there are legitimate financial transactions that generate an OID.    Therefore, the IRS did not

---

[4]  The offense conduct is more fully described in the PSR (ECF No. 361, PSR ¶¶ 12–20).

automatically reject the defendants' forms because the forms appeared on their face to have been issued by a creditor or financial institution. The IRS paid a number of fraudulent refunds to customers before specifically issuing a warning on its website about the Form 1099-OID Scheme in October of 2008. During calendar years 2008 and 2009, Castleberry allegedly prepared, or aided and abetted in the preparation of, at least 38 false tax refund claims using the Form 1099-OID Scheme. The returns involved in this case claimed over $9,500,000 in fraudulent refunds, and the IRS released funds for at least three of the claims totaling $403,533.

## ANALYSIS

## <u>General Standard of Review</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657

F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion that were resolved on direct appeal.    *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).    Hence, once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.    *Nyhuis*, 211 F.3d at 1343 (quotation omitted).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the

defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn,* 365 F.3d at 1234; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error—that is, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised in a section 2255 motion even if they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see*

*also United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    In order

to prevail on a claim of ineffective assistance of counsel, a defendant must show (1)

his attorney's representation fell below "an objective standard of reasonableness,"

and (2) a reasonable probability exists that, but for counsel's unprofessional conduct,

the result of the proceeding would have been different.    *Strickland v. Washington*,

466 U.S. 668, 687 (1984).    "The burden of persuasion is on a section 2255

petitioner to prove, by a preponderance of the competent evidence, both that

counsel's performance was unreasonable, and that [ ]he was prejudiced by that

performance."    *Demar v. United States*, 228 F. App'x 940, 950 (11th Cir. 2007)

(quotation marks, brackets, and citations omitted)[5]; *see also Johnson v. Alabama*,

256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on

the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and

both prongs must be proved to prevail.").    In applying *Strickland*, the court may

dispose of an ineffective assistance claim if a defendant fails to carry his burden on

either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720

F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

---

[5]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."    11th Cir. R. 36-2.

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, the court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus solely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203. To demonstrate prejudice in the context of an appeal,

the arguments the defendant alleges his counsel failed to raise must have been significant enough to have affected the outcome of the appeal.   *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).

A successful claim of ineffective assistance of counsel requires a defendant to provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Notably, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *See, e.g., Diaz v. Secretary for Dep't of Corrections*, 402 F.3d 1136, 1144–45 (11th Cir. 2005) ("Appellate counsel would not have prevailed on this argument, and nonmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel."); *Nyhuis*, 211 F.3d at 1344 ("Appellate

counsel is not ineffective for failing to raise claims reasonably considered to be without merit."). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g., Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Hollis v. United States,* 958 F. 3d 1120, 1124 (11th Cir. 2020) (failing to raise meritless objection to use of prior drug convictions as predicate offenses under ACCA not constitutionally ineffective).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. That is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case

law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the [§ 2255] motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon*, 518 F.3d at 1301.   To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.   *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).   An evidentiary hearing is not required on every claim of ineffective assistance of counsel, *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)), or on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a section 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d

1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

## Castleberry's Claims

### Procedurally barred claims—Grounds 1, 2, and 4

The arguments presented in three of Castleberry's grounds for relief could have been raised on direct appeal and therefore are subject to a procedural bar.    In Ground One, Castleberry claims he was denied a fair trial because he was "forced to represent himself after begging the Court for an attorney who was skilled in income tax laws" (ECF No. 545 at 4).    He further claims he was denied the ability "to confront witnesses and to produce evidence" and "to testify or give testimony on his own behalf" (*id.* at 7).    And he complains about the manner in which the court conducted the *Faretta* hearing and the court's alleged failure to consider all relevant information at that hearing (*id.* at 8–13).

Castleberry claims in Ground Two that "the United States District Court abused its discretion and acted in the capacity of Judge, Defense lawyer and prosecution" (ECF No. 545 at 14).    He complains the court denied "objections and request [sic] for certain evidence and rules to be admitted," erred by allowing him

to continue to represent himself, and abused its discretion by not ordering a mental evaluation until after trial (*see* ECF No. 327).[6]

In <u>Ground Four</u>, Castleberry claims the district court did not have jurisdiction to order him to pay restitution (ECF No. 545 at 27).   He asserts that 18 U.S.C. § 3663 does not authorize restitution payments to the IRS for a Title 26 offense unless agreed to by the parties in a plea agreement and that he never "agreed" to pay restitution (ECF No. 545 at 28–29) (citing *United States v. Stout*, 32 F. 3d 901, 905 (5th Cir. 1994)).   Castleberry also denies the existence of a restitution obligation because the IRS never paid money to him, directly or indirectly.

Each of these claims is procedurally barred because it was available for review on direct appeal.   *Lynn*, 365 F. 3d at 1234–35; *Bousley*, 523 U.S. at 621; *McKay*, 657 F.3d at 1195.   Each claim also fails on the merits for the reasons set forth below.

## **<u>Ground One</u>**

The bulk of the allegations in Ground One relate to Castleberry's self-representation, the *Faretta* hearing, and his ability—or alleged inability—to testify

---

[6] The record does not contain a mental evaluation or report because Castleberry refused to speak with the examiner (ECF No. 498 at 2).   At sentencing, standby counsel advised the court that she had no questions about Castleberry's competency, and the Government and the court concurred with her assessment (*id.* at 3–8).

Case Nos.: 3:14cr59/RV/EMT; 3:17cv855/RV/EMT

and present evidence.    In *Faretta*, the Supreme Court held that a criminal defendant has a right to represent himself at trial "when he voluntarily and intelligently elects to do so."    *Faretta*, 422 U.S. at 807; *see also Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (citing *Faretta* for the "well settled" proposition that a criminal defendant "has the right to proceed without counsel when he voluntarily and intelligently elects to do so" (internal quotation marks omitted)).    To waive his Sixth Amendment right to counsel, a defendant "must clearly and unequivocally assert the right of self-representation."    *United States v. Owen*, 963 F.3d 1040, 1048 (11th Cir. 2020) (quoting *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986)).    In addition, the waiver must be "knowing, intelligent, and voluntary."    *Id. (*quoting *United States v. Fant*, 890 F.2d 408, 409 (11th Cir. 1989)).

The "ideal method of assuring that a waiver is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation."    *Owen*, 963 F.3d at 1049 (quoting *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995)).    The purpose of this hearing, known as a *Faretta* inquiry, is to afford the judge an opportunity to determine whether "the defendant understands the risks of self-representation."    *Id.* (quoting *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002)); *Faretta*, 422

U.S. at 835.  "As long as the record establishes that the defendant understood the risks of self-representation and freely chose to face them, the waiver may be valid." *United States v. Stanley*, 739 F.3d 633, 645 (11th Cir. 2014) (quoting *Strozier v. Newsome*, 926 F.2d 1100, 1105 (11th Cir. 1991)).

The Eleventh Circuit has identified eight factors to consider in determining whether a defendant's waiver of his right to counsel was knowing and voluntary:

> (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of the charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which that counsel aided the defendant; (7) mistreatment or coercion of the defendant; and (8) whether the defendant was trying to manipulate the events of the trial.

*Owen,* 963 F.3d at 1049 (citing *Stanley*, 739 F.3d at 645–46).   A defendant's technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel.   *Faretta*, 422 U.S. at 836.

A defendant who is appointed counsel is not entitled to counsel of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).   Appointed counsel, of course, must be competent in the constitutional sense.   *See Strickland*, *supra*.   However, "it must be acknowledged that appointed counsel may not always

be able to offer the defendant the depth of experience or the range of investigative services that counsel of choice may have been able to provide."   *United States v. Moya-Gomez*, 860 F.2d 706, 725 (7th Cir. 1988).

Furthermore, a defendant is not guaranteed an attorney who agrees with his interpretation of the law, and his insistence upon the same may be found to constitute a waiver of his right to counsel.   *United States v. Turner*, 287 F.3d 980, 984 (10th Cir. 2002) (defendant who insisted on an attorney who agreed with his interpretation of the tax laws after having been advised of his rights was found to have waived counsel).   A defendant's attempt to hinder the progression of his case by refusing to either accept counsel or agree to proceed pro se will be found to have waived counsel.   *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005) (finding unequivocal waiver of the right to counsel when defendant charged with violating tax laws refused to accept every constitutionally recognized form of counsel while simultaneously refusing to proceed pro se); *see also United States v. Brown*, 591 F. 2d 307, 310 (5th Cir. 1979) (refusal to accept any counsel except that of his own choosing "can only be construed as a knowing and intelligent waiver of counsel"); *United States v. Sarsoun,* 834 F.2d 1358, 1363 (7th Cir. 1987) (failure to cooperate with court implied waiver of right to counsel); *United States v. Grosshans,* 821 F.2d

1247, 1251 (6th Cir. 1987) (defendant knowingly waived right to counsel where she refused to obtain an attorney, intended to represent herself, and was aware of disadvantages of self-representation, as evidenced by numerous motions filed pro se); *Johnstone v. Kelly,* 808 F.2d 214, 216 (2nd Cir. 1986) (defendant's persistent requests to represent self were construed as knowing, voluntary, and unequivocal waiver of right to counsel); *United States v. Moore,* 706 F.2d 538, 540 (5th Cir. 1983) (persistent, unreasonable demand for appointment of new counsel is functional equivalent of knowing and voluntary waiver of counsel).

Here, the district court held a *Faretta* hearing three months before trial, on October 22, 2014, at Castleberry's request (ECF No. 499 at 2).  Castleberry's court-appointed counsel appeared with him at the hearing.  Counsel indicated, and Castleberry confirmed multiple times, that he wanted her to act as standby counsel (*id.* at 2, 3, 4, 7, 8).  Castleberry obstinately engaged with the court numerous times about the difference between "represent" and "re-present" (*id*. at 3, 5, 7–8, 9, 18, 19–20), claimed he had not been given proper notice of the proceedings (*id.* at 6), insisted that the name on various court documents was not his name, accused the court of attempting to "fabricate a controversy" by using that name, and baldly asserted that the potential penalties for the crimes with which he had been charged

did not apply to him (*id.* at 6–7, 11, 13–14, 15).   Castleberry stated he was not

familiar with the local rules of this court pertaining to criminal matters or the process

of a trial, other than what he had seen on television, and said that was the reason he

needed standby counsel (*id.* at 11, 12).   The following exchange took place:

> THE COURT:   Mr. Castleberry, somehow you have to come to the understanding of the realistic—the realty [sic] of your situation, that you are charged with those offenses.   And when we have the trial, should you be found guilty, you could be sentenced to 24 years in the federal penitentiary.   And are you willing to take that challenge based upon what you saw on *Matlock*?
>
> DEFENDANT CASTLEBERRY:   What are the alternatives?
>
> THE COURT:   To have competent counsel, very well-trained and very experienced, to do her very best to ensure that the trial is fair and that you are defended in that as best that she possibly can with all of her training and experience.
>
> DEFENDANT CASTLEBERRY:   Okay.   After we have the evidentiary hearing and prove that I'm who you say I am, then that's a serious consideration; but until then I think it's a moot point.

(*id.* at 14).

Counsel advised the court that she had met with Castleberry several times,

they had discussed the case and reviewed discovery, and she believed he understood

the charges against him (ECF No. 499 at 14).   Both Castleberry and counsel agreed

that Castleberry wanted to file certain motions or pleadings that counsel was unwilling to file based on her professional judgment (*id.* at 15, 17).

In light of Castleberry's persistent attempts to thwart and confuse the proceeding, the court stated, "I'm going to put you on record as representing yourself" (ECF No. 499 at 18).  The court advised counsel that she had "no responsibility beyond responding to any inquiries or requests that [Castleberry] might make" and no responsibility for discovery "other than to advise him that [she has] it, whatever it is, and his rights as far as discovery goes" (ECF No. 499 at 19).

Upon review of the record, including the transcript of the *Faretta* hearing, it is plain that any misunderstanding about the dangers of self-representation were created by Castleberry's own behavior.   The court warned Castleberry of the risks of self-representation, but Castleberry persisted in his insistence that the court had not proven he was who the court said he was.   Castleberry's behavior led to less than orderly proceedings.   Despite Castleberry's obstinance, the district court informed him of the charges against him, including the potential sentences, and it is clear he understood both.   In fact, Castleberry acknowledges in his reply that the decision to waive the right to counsel "was clearly his own choice and he made it with his eyes wide open" (ECF No. 556 at 23).   Contrary to his repeated assertions,

therefore, Castleberry plainly was not "forced" to represent himself.    In short, the record reflects that the district court had ample basis upon which to conclude Castleberry understood the risks of self-representation, likely to a greater extent than he let on, and chose to face them.[7]

Once Castleberry chose to represent himself, he was the master of his case, although he could consult with standby counsel (whose performance he praised at sentencing (ECF No. 498 at 29)).    Moreover, although Castleberry states he was unable to confront witnesses or present evidence, he identifies neither witnesses he was unable to confront nor evidence he was unable to produce, and he wholly fails to explain how counsel's alleged ineffectiveness influenced the outcome of the trial.[8] Castleberry's claim that he was unable to give testimony is patently false.    The trial minutes reflect that Castleberry testified from 11:06 a.m. on day eight of the trial through 1:43 p.m. on day nine of the trial (ECF No. 265 at 9).    Standby counsel questioned him on direct and re-direct examination (ECF Nos. 465, 466), and Castleberry examined the Government's witnesses.    Castleberry claims in his

---

[7] It is worth noting that while Castleberry now complains standby counsel lacked sufficient experience in tax law, at no point during the hearing did he launch such a complaint.

[8] The court is not persuaded by Castleberry's assertion in his reply that the cold courtroom temperature rendered him unable to concentrate (ECF No. 556 at 32).

reply, in an utterly conclusory fashion, that "[t]here were questions [an experienced] and competent attorney would have been able to examine Defendant on the witness stand where he could have explained to the jury where the verdict would have been different" and that an experienced lawyer would have been able to "ask the correct questions the jury needed to hear," but Castleberry wholly fails to specify such questions (ECF No. 556 at 20; *see also* ECF No. 556 at 21, 24).   Tellingly, the court commented at sentencing that Castleberry did a good job of representing himself (ECF No. 498 at 6).

Castleberry also claims he was prejudiced by a lack of access to a "real law library," but again, he wholly fails to explain the manner in which he was so prejudiced, and there is no indication he requested the assistance of standby counsel in that regard.   Simply put, Castleberry's claims regarding self-representation— even if not procedurally barred—fail for lack of factual support and specificity.

## Ground Two

Castleberry's second claim for relief, to the extent it can be discerned, includes some overlap with the issues raised in Ground One.   Castleberry adds a complaint about the court denying his objections and not permitting certain evidence to be admitted (ECF No. 545 at 14).   Challenges to evidentiary rulings are not

constitutional in nature and, as such, do not fall within the scope of section 2255. *See, e.g., Williams v. Taylor*, 529 U.S. 362, 383 (2000) ("habeas corpus is not to be used as a second criminal trial"); *Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings). Furthermore, Castleberry does not identify the alleged improper rulings or explain how the outcome of his case was affected thereby.

Castleberry also complains about the court's failure to order a mental evaluation before trial (ECF No. 545 at 14). He argues, however, that such an evaluation "would constitute mitigating evidence for *sentencing*" (*id.* at 24) (emphasis added). As noted above, Castleberry refused to cooperate with the evaluator before sentencing, and there is nothing in the record to suggest he would have cooperated had the evaluation been conducted earlier in the proceedings (*see* ECF No. 498 at 2; ECF No. 327). He asserts in the reply that he was mentally incompetent and suffered from a "serious mental disease"; such assertions are conclusory, unpersuasive, and wholly unsubstantiated (ECF No. 556 at 25, 26, 34).

Even if not procedurally barred, therefore, none of the issues raised in Ground Two entitle Castleberry to relief. In other words, as with Ground One, Castleberry

has failed to present a meritorious issue which, if presented on appeal, would have affected the outcome of the proceeding.

### **Ground Four**

Ground Four, like Ground Two, includes some overlap with Ground One. The main assertion unique to this ground for relief is that the court did not have authority to order Castleberry to pay restitution (ECF No. 545 at 27). A challenge to a district court's restitution order is not viable under 28 U.S.C. § 2255. *See Mamone v. United States*, 559 F. 3d 1209 (11th Cir. 2009) (prisoner cannot use section 2255 to challenge restitution portion of sentence, whether challenge is alone or combined with another challenge to custodial portion of sentence); *Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998) (section 2255 cannot be used to challenge only the restitution portion of a sentence). It is worth noting, however, that "[w]hen more than one defendant contributes to the loss of a victim, the district court 'may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.'" *United States v. Baldwin*, 774 F. 3d 711, 729 (11th Cir. 2014) (quoting 18 U.S.C. § 3664(h)). A defendant whose involvement in a scheme is significant may be held responsible

for the entire restitution amount assessed in a conspiracy.    *Id.*    Even if it could be raised in a section 2255 motion, therefore, Castleberry's claim regarding the award of restitution has no merit.

### Ground Three

Castleberry complains in Ground Three of his amended motion that court-appointed counsel had no solid experience in IRS tax law and failed to ensure his rights were protected while acting as standby counsel (ECF No. 545 at 17).    He also claims counsel did not assist in developing a defense strategy.    Castleberry plainly misunderstands the role of standby counsel.    As the court advised at the *Faretta* hearing, counsel had "no responsibility beyond responding to any inquiries or requests that [Castleberry] might make" (ECF No. 499 at 19).    Castleberry's assertion that counsel was "totally responsible for any and all errors in the case" thus is wholly unfounded, if not disingenuous (ECF No. 545 at 19).

Moreover, Castleberry's assertion that the outcome of the case would have been different had counsel been experienced in tax law is utterly unsupported. Castleberry acknowledges in his motion that standby counsel's resume indicated she had experience in "Federal and State tax offenses"; yet, he complains that "Ms. Wilson's resume stated nothing about any details of what type or what kind of tax

offenses or law she handled in State or Federal Court" (ECF No. 545 at 18).    As set forth above, a defendant who is appointed counsel is not entitled to counsel of his choice.    *See Gonzalez-Lopez*, 548 U.S. at 151.    And while counsel must be competent in the constitutional sense, appointed counsel may not be as experienced as the defendant's preferred counsel.    *See Strickland*, *supra*.    In any event, Castleberry has not specified any manner in which standby counsel's performance was deficient as a result of her alleged lack of knowledge and experience in tax law, and in light of his decision to represent himself, trial counsel's role in the case necessarily was limited.    Significantly, Castleberry never complained at trial about counsel's performance or lack thereof.    To the contrary, at sentencing, Castleberry read a list of sentencing considerations prepared by standby counsel and affirmed to the court that "Ms. Wilson did a very good job," thereby undermining any assertion she was ineffective (ECF No. 498 at 29).

Castleberry further claims he "requested certain investigation and certain IRS tax code forms" and that counsel made no attempt to obtain the documents (ECF No. 556 at 14).    Once again, however, Castleberry neither identifies the documents he allegedly requested nor explains how the documents would have impacted his case. Similarly, he makes oblique references to records, files, and individuals he claims

should have been presented or procured for trial, but he does not identify any such records, files, or individuals or explain how they would have altered the outcome of the case.

Finally, Castleberry claims counsel's sidebar advice was inadequate and prejudicial, but he does not specify the advice to which he refers. As with the other alleged errors, such vague allegations are wholly insufficient to establish constitutionally deficient performance by standby counsel. *See Boyd*, 697 F. 3d at 1333–34.

## Castleberry's Reply

Castleberry raised the issue of ineffective assistance of appellate counsel (IAAC) in his reply, claiming for the first time that appellate counsel was constitutionally ineffective for failing to follow his instructions in filing the appellate brief (ECF No. 556 at 23). Because Castleberry did not raise the issue of IAAC in his section 2255 motion, it is deemed waived. *See, e.g., United States v. Herget*, 585 F. App'x 948, 950 (10th Cir. 2014) (IATC claim presented for the first time in section 2255 reply brief is generally consider waived) (citation omitted); *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998) (district court does not abuse its discretion in refusing to consider new issues raised in a section 2255 reply

brief after the government filed its response) (citations omitted); *Wallace v. United States*, Civ. Case No. 8:13cv2262-T-24MAP; Cr. Case No. 8:11cr287-T-24MAP, 2014 WL 12605465, at *5 (M.D. Fla. Jan. 13, 2014) (because petitioner did not raise IAAC in his section 2255 petition and, instead, raised it for the first time in his reply, it was deemed waived and not cognizable on collateral review) (citing *United States v. Otalvora,* Nos. 93 CR 096, 95 C 0157, 1995 WL 151768, at *1 (N.D. Ill. Apr. 4, 1995) (arguments presented for the first time in a section 2255 reply brief are waived)); *see also United States v. Magluta*, 418 F.3d 1166, 1185–86 (11th Cir. 2005) (in the context of a direct appeal, issues not raised until the reply brief will not be considered, as they are deemed abandoned) (citations omitted); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (in the context of a habeas petition filed under section 2254, a traverse is not the proper pleading to raise additional grounds for relief, as state is not properly advised of additional claims and thus is unable to respond).    Indeed, Rule 2(b)(1) of the Rules Governing Section 2255 Proceedings provides that the motion must "specify all the grounds for relief available to the moving party."    *Id.*    Accordingly, Castleberry's claim of IAAC is waived and is not cognizable for purposes of his section 2255 motion.

Even if the IAAC claim had not been waived, it fails for at least two reasons.

First, it is time-barred.    Claims brought pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations.    Relevant to this case, the limitation period runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1).    The Eleventh Circuit affirmed Castleberry's sentence on December 30, 2016 (ECF No. 515).    Because Castleberry did not file a petition for a writ of certiorari, his conviction became final when the time for doing so expired, ninety days after entry of the court of appeals' judgment, or on or about March 30, 2017.[9] *Clay v. United States*, 537 U.S. 522, 525 (2003); *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002).    Therefore, any *new* issues raised in the May 29, 2018, reply are facially untimely, having been raised more than one year from the date Castleberry's conviction became final.    28 U.S.C. § 2255(f)(1).

The claim also would be barred if raised in an amended or supplemental section 2255 motion.    In order for claims newly presented in an amended or supplemental motion to be considered on the merits, they must arise from the same set of facts as the original claims, not from separate conduct and occurrences in time

---

[9] Issuance of the mandate, on January 30, 2017 (ECF No. 516), has no bearing on when the time expires for filing a petition for writ of certiorari.    *See* Rule 13.3 of the Rules of the Supreme Court of the United States; *Clay v. United States*, 537 U.S. 522, 525 (2008).

or type. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000); *see also Mayle v. Felix,* 545 U.S. 654, 664 (2005) (so long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order); *Jeffries v. United States,* 748 F.3d 1310, 1314 n.3 (11th Cir. 2014). The essence of Castleberry's new claim—that he is entitled to relief because appellate counsel was constitutionally ineffective—relies on a different legal theory and basis for relief, as it concerns conduct and occurrences separate from the grounds for relief raised in his motion. Castleberry's IAAC claim thus would be barred even if raised in an amended or supplemental motion.

Second, even if the court were to find that the origin of Castleberry's IAAC claim even *arguably* is based on the same underlying core of operative facts as claims raised in his motion or otherwise is not procedurally barred, the IAAC claim lacks merit. As discussed above, the claims Castleberry raised in the instant section 2255 motion—as well as any additional claims he faults appellate counsel for failing to assert—are without merit, and appellate counsel is not constitutionally ineffective for failing to raise meritless claims.

Not only does Castleberry raise novel issues in his reply, but the reply is not limited to issues raised in the Government's response. Indeed, in addition to

raising the IAAC claim for the first time, Castleberry repeatedly attacks the indictment as being fraudulent, illegal, vague, and unsupported, and he asserts the Government did not prove the allegations contained therein because there was "no evidence" of a conspiracy or crime against the United States (ECF No. 556 at 2–10, 13, 15–19, 26–27, 28, 29–30, 34–35, 41–42).    Castleberry also claims he was "punished" for exercising his right to proceed to trial and denied a jury of his "peers" (*Id.* at 11, 14–15).    Finally, Castleberry claims counts five and six of the indictment were lesser included offenses of the other four counts and that the jury should have been so instructed[10] (ECF No. 556 at 27–28).

None of the new claims referenced above were addressed in the Government's response, and they do not relate back to the claims raised in Castleberry's amended motion.    Hence, they too are time-barred.    *Davenport*, 217 F. 3d at 1344.    They also are procedurally barred because they could have been raised on direct appeal and/or are not cognizable under section 2255.    Finally, to the extent the claims can be construed as ineffective assistance of counsel claims, the same rules regarding relation back apply.    The claims arise from separate conduct and occurrences in

---

[10] Although Castleberry was convicted and sentenced on each of the counts, the concurrent sentences on these counts did not affect his total custodial sentence.

both time and type to the ineffective assistance of counsel claims previously raised and thus do not relate back.    *Id.*, 217 F.3d at 1346; *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014); *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003).    Finally, Castleberry has adduced no evidence or even argument showing the claims have merit.    Like his other allegations, they are mere bald assertions.

## Conclusion

For all the foregoing reasons, the court finds Castleberry has failed to show he is entitled to relief on any of the claims raised in his amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and the issues raised for the first time in his reply are improper, cannot be considered, and lack merit. Moreover, Castleberry has not demonstrated that an evidentiary hearing is warranted.    To the extent Castleberry seeks to engage in a "fishing expedition" by exploring or expanding his vague assertions at a hearing, he has presented no basis upon which the court could conclude such a hearing is warranted.    Castleberry's amended motion, therefore, should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 3:14cr59/RV/EMT; 3:17cv855/RV/EMT

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      That the Amended Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 545) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18<u>th</u> day of November 2020.


 */s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   An objecting party must serve a copy of its objections on all other parties.   A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**